Willie Nelson brought this action to recover benefits from U.S. Steel, under the Workmen's Compensation Act of Alabama. Nelson alleged that while working for U.S. Steel, he sustained an injury to his thumb that resulted in a permanent partial disability to his body as a whole. Following oral proceedings, the trial court found that Nelson's work-related accident resulted in a permanent loss of 54% of his earning capacity. Benefits were awarded accordingly. U.S. Steel appeals. *Page 136 
Initially, U.S. Steel asserts that Nelson failed to prove that his employment was the medical cause of his condition.
For an injury to be compensable under the workmen's compensation act, the injury must be caused by an accident arising out of and in the course of the employment. Clanton v.Hudson Foods, Inc., 594 So.2d 141 (Ala.Civ.App. 1991). In order to prove that an accident occurred within the meaning of the act, the employee must prove legal and medical causation.Clanton. In this appeal we are concerned solely with Nelson's establishment of medical causation.
In order to prove medical causation, an employee must show that the conditions, dangers, or risks of the job precipitated or contributed to the injury. Clanton. Testimony of medical doctors is not always required in order for a trial court to find medical causation. Clanton. Rather, the totality of the evidence, including both lay and expert testimony, may satisfy a showing of medical causation. Whether the claimant has satisfied this test in the absence of medical testimony is to be determined on a case-by-ease basis. Clanton.
The standard of appellate review in workmen's compensation cases is two-pronged. This court must determine if there is any legal evidence to support the findings of the trial court. If such evidence is found, we must determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala. 1991).
The record reflects that Nelson had been satisfactorily employed by U.S. Steel for over forty years. On October 15, 1991, the date of the alleged accident, Nelson was performing his normal job as a utility man and "OD man." This job entailed picking up rolls of steel with a tractor and putting them on a machine to smooth the rough edges. Nelson testified that while he was breaking the steel band to remove the "bad parts," the steel band hit his thumb. He testified that the pain was so severe that he left his post to report the injury to his supervisors. Shortly thereafter, Nelson was taken to the emergency room, where he was given medication and sent home. Nelson returned to the emergency room the next day, complaining of pain. He was admitted to the hospital at that time.
Dr. Stephen Roberts was Nelson's treating physician. Roberts performed exploratory surgery on October 17, 1991, and found that Nelson had "serous material" in his right thumb and poor circulation. Nelson was taken back to the operating room on October 24, 1991, because he was developing dead areas around the tip of his thumb. He underwent two more operative procedures. On November 3, 1991, Roberts amputated Nelson's thumb at the IP joint, the joint located at the middle of the thumb.
Roberts testified in deposition that Nelson suffered from pre-existing arteriosclerotic disease, which caused him to have bad circulation throughout his body. He opined that the bad circulation was the reason that he eventually had to amputate the thumb. When questioned about the precipitating cause of the incident, Roberts opined, "there's no way for us to tell what brought this episode on." Roberts testified that "minor trauma potentially in arteriosclerotic disease could potentially cause it." Roberts, however, did not credit the incident described by Nelson as being the precipitating cause of the medical problem.
The controversy over medical causation stems from U.S. Steel's contention that Nelson's resultant amputation was not caused by the alleged accident but by his pre-existing arteriosclerotic disease. It insists that Roberts's testimony substantiates its position.
While there was evidence that Nelson had pre-existing arteriosclerotic disease, there was no evidence presented that his condition affected his ability to perform his work for U.S. Steel. Blue Bell, Inc. v. Nichols, 479 So.2d 1264
(Ala.Civ.App. 1985). Nelson's testimony concerning the accident, including how it occurred, the onset of the symptoms, and his immediate request for medical treatment, substantiated his claim that the precipitating cause of his resultant amputation was the steel band hitting his thumb on October 15, 1991. We find, as the trial court apparently did, that the treating physician's testimony *Page 137 
was contradictory as it pertained to the precipitating cause of the resultant injury.
Keeping in mind the principles of law annunciated above, we find that the totality of the circumstances of this case supports the trial court's finding of medical causation.
U.S. Steel next contends that the trial court erred in treating Nelson's thumb amputation as an injury to the body as a whole. It contends that recovery should have been limited to the scheduled allowance under § 25-5-57(a)(3)a, Code 1975.
Concerning the exclusiveness of scheduled allowances, our supreme court stated the following in Bell v. Driskill,282 Ala. 640, 213 So.2d 806 (1968):
 "[A]lthough the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the Workmen's Compensation Law to the amount allowed under the schedule for injury to the one member."
At the time of the hearing Nelson was 62 years of age. His work history consisted solely of manual labor. He has been employed by U.S. Steel for the last forty-odd years. He completed the seventh grade and took a home study course to complete his high school credits.
Nelson testified that he could not pick up as much as he was able to pick up prior to the amputation and that he had difficulty writing. He returned to work so that he could qualify for early retirement. He testified that the effect of the amputation caused him problems at work, because he could not do what he had done prior to the accident without the assistance of co-workers.
William Crunk, a vocational expert, testified that, in his opinion, the amputation had a greater effect on Nelson's employability than it would have had on a non-labor employee. He stated that a laborer's hands and back are his most significant body parts as far as employability is concerned. He concluded that the injury affected Nelson's ability to do his job and that it affected his future prospects for employability. He based his opinion on Nelson's age, work history, and education. In his opinion, Nelson sustained a 54% loss of earning capacity.
Concerning this issue, the trial court made the following finding:
 "[T]he court recognizes that a thumb is a scheduled injury and in accordance with the Alabama Supreme Court in Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), this Court finds that given Mr. Nelson's age, educational background, and work and personal history, the loss of his thumb on his dominant hand has produced a greater and more prolonged incapacity than would naturally result from the specific injury to the thumb."
Considering Nelson's age, work history, education, and his lack of present ability, the trial court had ample evidence before it to determine that the amputation caused such abnormal and unusual incapacities with his body as a whole that it significantly affected Nelson's ability to earn and to be employed. The trial court did not err in refusing to limit Nelson's recovery to a scheduled allowance. Smith v. Capps,414 So.2d 102 (Ala.Civ.App. 1982).
U.S. Steel asserts that the trial court erred in finding that Nelson had sustained a loss in earning capacity. It insists that such a finding is inconsistent with the undisputed evidence that Nelson's post-return to work earnings exceeded his pre-injury earnings.
For a permanent partial injury, the measure of compensation is loss of earning capacity. If an employee's post-injury wages are the same or higher than his pre-injury wages, a presumption arises that no loss of earning capacity has occurred.Winn-Dixie of Montgomery, Inc. v. Nobels, 571 So.2d 1174
(Ala.Civ.App. 1990). The presumption may be rebutted by evidence which demonstrates incapacity or which explains why the higher wages are an unreliable basis for determining the employee's earning capacity. Winn-Dixie. *Page 138 
The evidence is undisputed that Nelson's post-injury earnings exceeded his pre-injury earnings. We find, however, that the evidence presented at trial rebuts the "no loss of earning capacity" presumption raised by Nelson's post-injury wages.
Crunk testified that, in his opinion, Nelson sustained a 54% loss of earning capacity. His opinion was based on Nelson's age, work history, education, and the unpredictable nature of future employment. The fact that Nelson returned to work and was earning more post-injury than he did pre-injury did not change Crunk's opinion. He testified that he did not consider Nelson's post-injury earnings to be a reliable basis for determining his loss of earning capacity.
A reasonable view of the evidence supports the trial court's finding of a loss of earning capacity. We find no error.
U.S. Steel asserts that the trial court erred in admitting the testimony of William Crunk. It insists that any evidence concerning an alleged vocational disability should have been excluded by § 25-5-57(a)(3)i of the new Workers' Compensation Law.
That section, which became operative in August 1992, provides that where an employee returns to work at a wage equal to or greater than his pre-injury wage, following maximum medical improvement from a non-scheduled injury, evidence of alleged vocational disability shall not be considered at trial.
Nelson contends that § 25-5-57(a)(3)i is not applicable to this case because his injury, which occurred in October 1991, occurred prior to the operative date of the new statute.
We find § 25-5-57(a)(3)i to be substantive in nature. U.S.Steel Mining Co. v. Riddle, 627 So.2d 455 (Ala.Civ.App. 1993). With such a classification, it may not be used retroactively. U.S. Steel Mining Co. The injury occurred prior to the operative date of § 25-5-57(a)(3)i. That statute, therefore, has no application to this appeal. U.S. Steel MiningCo.
U.S. Steel finally contends that the trial court erred in awarding Nelson all reasonable and necessary vocational expenses, as provided in § 25-5-77(c), Code 1975.
U.S. Steel cites no authority, persuasive or otherwise, to support its contention. We, therefore, decline to address it.Harris v. Harris, 528 So.2d 866 (Ala.Civ.App. 1988).
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.