SHORES, Justice.
On May 28, 1985, James H. Sherer, an employee of Sherer Timber Company, Inc., went to Clanton to transport lumber owned by Sherer Timber Company to Selma. While he was transporting the lumber to Selma, the truck Sherer was driving was involved in a collision with another vehicle. As a result of the collision, Sherer suffered fractures of his right foot and ankle, was knocked unconscious, and suffered other injuries. Sherer was hospitalized for several days, and while he was in the hospital his right ankle was placed in a east. Sherer returned to full duty at Sherer Timber Company on September 9, 1985. He filed this workers’ compensation action on May 28, 1987, against Sherer Timber Company. The *1290 first trial on the matter was held on March 9, 1990.
At that trial, Dr. William Sudduth, an orthopedic surgeon and Sherer’s attending physician, testified that Sherer had a seven percent impairment rating to the body as a whole. He testified that he had allowed Sherer to return to full duty at work on September 9, 1985, with no restriction other than to wear a high-laced boot for additional ankle support. Dr. Jane Roberts, a vocational expert, that Sherer had a vocational disability rating of seven percent. Dr. William Crunk, a vocational expert, testified that Sherer had a 20% vocational disability.
Sherer Timber Company offered the testimony of Dr. Glen Barnes, an orthopedic surgeon who had examined Sherer at the request of the employer; and Mrs. Lynn Munroe, who is a vocational expert. Dr. Barnes testified that Sherer has no impairment as a result of his injury. Ms. Monroe testified that Sherer did not sustain any disability as a result of the injury.
Sherer testified that as president of Sherer Timber Company, Inc., he oversaw all operations of the company, including the logging operation, timber buying operations, and supervision of employees. He testified that in buying timber and in supplying timber to various companies, he had to go out and locate tracts of timber that were for sale and inspect the timber for their quality and value. He called this process “cruising timber.” Sherer testified that his ankle would cause him pain and discomfort if he walked for an extended period of time or if he stepped on an uneven surface. Sherer testified that when he experienced pain or swelling, he would continue his movement at a slower pace.
Sherer testified that he earned a salary of $76,000 in 1984, the year before the injury. Sherer testified that he earned over $100,000 in 1985; about $95,000 in 1986; and $114,000 in 1987. He estimated his income to exceed $100,000 in 1988.
After making certain findings of fact and conclusions of law, then Circuit Judge Charles A. Thigpen entered a judgment on June 18, 1990, awarding Sherer a 20% permanent partial disability.
On January 29,1990, the employer appealed to the Court of Civil Appeals. On December 20, 1991, the Court of Civil Appeals dismissed the appeal as untimely. Sherer Timber Co. v. Sherer, 612 So.2d 467 (Ala.Civ. App.1991). This Court, on certiorari review, reversed the judgment of the Court of Civil Appeals and remanded the case for that court to consider the merits. Ex parte Sherer Timber Co., 612 So.2d 467 (Ala.1992). On November 13, 1992, the Court of Civil Appeals remanded the case for the trial court to determine whether “Sherer suffered a loss of ability to earn.” Sherer Timber Co. v. Sherer, 612 So.2d 468 (Ala.Civ.App.1992).
Because the original trial judge, Judge Thigpen, had moved to the Court of Civil Appeals, the ease on remand was assigned to Judge Meigs. Judge Meigs held a second trial on March 9,1995.
At the second trial, two witnesses testified. Sherer testified that he hired an assistant for a couple of years after his accident, but that he had released that person almost eight years before this second trial. Sherer stated that although he still experienced some pain, he was still capable of performing all of his job functions and that he had not returned to see his treating orthopedic surgeon or any other physician regarding his injury since 1985. Sherer testified that he often used a four-wheel-drive vehicle to survey timber and that he wore a high-laced boot for protection. Sherer testified that after the injury, he had earned more money than before his injury, including more than $100,000 in 1985; over $90,000 in 1986; over $110,000 in 1987; over $90,000 in 1988; over $120,000 in 1989; and “in the high 80s” in 1990.
Norma Strickland, a vocational expert, testified that Sherer had no loss of access to the job market sufficient to support a finding of a vocational disability.
Judge Meigs reviewed the findings of fact and the judgment entered at the first trial before Judge Thigpen, which included a summary of the evidence presented ore tenus. He entered an order finding that Sherer had *1291 suffered a 20% loss of ability to earn. Judge Meigs’s order stated, in pertinent part:
“Based on all the evidence presented the court finds that there is certainly sufficient evidence upon which [Judge Thigpen] could have found at the time of the original trial that the Plaintiff suffered a 20% loss of ability to earn. Accordingly, this Court hereby finds that the Plaintiff’s loss of ability to earn is 20%.”
The employer appealed. The Court of Civil Appeals affirmed without an opinion. See Rule 53, Ala.R.App.P. Sherer Timber Co. v. Sherer, 681 So.2d 656 (Ala.Civ.App.1995) (table).
We granted certiorari review in order to determine whether the trial court’s conclusion that Sherer had suffered a 20% loss of ability to earn is supported by the evidence.
“[W]hen an employee’s post-injury earnings equal or exceed [the employee’s] earnings at the time of injury, there exists a presumption of earning capacity commensurate with earnings. This presumption may be rebutted by (1) independent evidence of incapacity or (2) evidence tending to indicate that the post-injury earnings are an unreliable basis for estimating earning capacity. Factors that would indicate that post-injury earnings are an unreliable basis for estimating earning capacity include: an increase in general wage levels since the time of the accident; the employee’s own greater maturity or training; longer hours worked by the employee after the accident; payment of wages disproportionate to capacity out of sympathy to the employee; and the temporary and unpredictable character of post-injury earnings.”
Marley Erectors, Inc. v. Rice, 585 So.2d 1379, 1381-82 (Ala.Civ.App.1991) (citations omitted). See also Jim Walter Resources, Inc. v. Hall, 516 So.2d 690 (Ala.Civ.App. 1987).
Neither Judge Thigpen’s order, entered June 19, 1990, nor Judge Meigs’s order on remand, entered March 20, 1995, addresses the primary defense raised by the employer: that the employee did not rebut the presumption that earning capacity is commensurate with earnings when an employee’s post-injury earnings equal or exceed the employee’s earnings at the time of the injury. In neither order did the trial judge find as a fact that independent evidence of incapacity rebuts the presumption or that Sherer’s post-injury earnings are an unreliable indicator of earning capacity. Under these facts, we must conclude that the trial court’s finding on remand, that the employee had suffered a 20% loss of ability to earn, is not supported by the evidence. Marley Erectors, Inc., supra; Jim Walter Resources, Inc., supra. Accordingly, the Court of Civil Appeals erred in affirming the judgment of the trial court. The judgment of the Court of Civil Appeals is reversed and the case is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, HOUSTON, KENNEDY, and COOK, JJ., concur.
BUTTS, J., dissents.