Rita Brown suffered three work-related injuries while working for her employer, Champion International Corporation: a neck injury; a right shoulder injury; and a left shoulder injury. Brown sued for workmen's compensation benefits. After an ore tenus proceeding, the trial court found that only one of the three injuries — the injury to the right shoulder — resulted in permanent partial disability.
Brown appeals, claiming that the trial court erred by failing to find that all three of her injuries resulted in permanent partial disability. Champion cross appeals, arguing that the trial court erred by finding that Brown had any permanent partial disability because, it insists, she had no loss of earning capacity.
Brown worked as a cutter operator in Champion's Courtland, Alabama, paper plant. Her three injuries were caused by two work-related accidents: the first on November 22, 1990, and the second on July 6, 1993. In the 1990 accident, she was injured when she fell. In the 1993 accident, she was injured when she turned a valve handle. Brown's first accident is governed by the provisions of the Workmen's Compensation Act, Ala. Code 1975, § 25-5-1 et seq., as it existed before the effective dateof the 1992 amendments ("the Old Act"). Brown's second accident is controlled by the Workers' Compensation Act, Ala. Code 1975, § 25-5-1 et seq., and the amendments effective August 1, 1992 ("the New Act").
After the first accident, Brown reported to her physician that she had pain in her neck, right shoulder, and arms. At trial, she testified that, as a result of the first accident, she also experienced pain in her left shoulder. Brown continued to work until February 12, 1991, when she had surgery to remove what had been diagnosed as a ruptured cervical disc and to fuse the vertebrae in her neck. Champion paid Brown's medical expenses and temporary total disability benefits for the neck injury.
When Brown's neurosurgeon discharged her, he assigned her a whole body impairment rating of 5 percent due, he said, to the loss of motion in the cervical spine. He stated, however, that normally there is very little motion in the cervical spine, and he gave his opinion that Brown should be able to resume her "full normal activities" without loss of function.
Brown returned to work on August 16, 1991, as a cutter operator. She worked in that position for four to six months and then Champion changed her position to a wet end tender. The new position was less strenuous but had a higher wage than the previous position. After her return to work, Brown began to have pain in her right shoulder and she consulted another doctor. On June 25, 1992, she had arthroscopic surgery to repair what had been diagnosed as a torn rotator cuff in her right shoulder, an injury that Brown's doctor attributed to the first accident. Champion paid Brown's medical expenses and temporary total disability benefits for the right shoulder injury.
Brown's doctor assigned a 15 percent permanent partial impairment to the upper right extremity and returned her to work on October 2, 1992, with lifting restrictions. Patsy Bramlett, a vocational rehabilitation counselor, gave her opinion that, as a result of the *Page 26 
November 22, 1990, work-related accident, Brown had a 54 percent loss of access to jobs in the open market and a 54-57 percent loss of earning capacity.
On July 6, 1993, Brown had a second work-related accident. She felt a burning and stinging sensation in her shoulders as she was turning a large valve at work. Complaining of left shoulder pain, she saw the same doctor who had performed surgery on her right shoulder. At trial, Brown testified that she told the doctor that the pain in her left shoulder had existed since the time of the first accident, but had recently intensified. Brown did not describe to the doctor the circumstances of her second accident. The doctor's notes indicate that Brown told him she had had pain in the left shoulder since her first accident. They also indicate, however, a "date of accident" for the current medical complaint of "6/6/93."
On September 16, 1993, Brown's doctor performed arthroscopic surgery to repair a torn rotator cuff in Brown's left shoulder. Brown returned to work on January 6, 1994, with the same lifting restrictions she had been given for the right shoulder injury. The doctor assigned a 15 percent permanent partial impairment to Brown's upper left extremity.
After her return to work in January 1994, Brown earned more money than she had ever earned before. Her wages for 1994 and 1995 exceeded her wages for 1990 by $200 per week. There was testimony at trial, however, that all Champion employees had received a wage increase during that time. Brown testified that since her first accident, she has worked in almost constant pain. Her supervisor testified that Brown is an excellent employee and does not complain.
The trial court made the following findings:
 "The November 22, 1990, accident resulted in concurrent injuries to the plaintiff's cervical disc and right shoulder. Although the neurosurgeon who operated on the spinal injury assigned a five percent (5%) whole body impairment, he placed no restrictions on the plaintiff's work and released her to full normal activities. The Court finds no permanent and partial vocational impairment caused by this injury. The right shoulder injury, on the other hand, resulted in a fifteen percent (15%) permanent impairment to the upper extremity. . . . Lifting restrictions were placed upon the plaintiff which did not exist before the injury. She now works at a job which, at least in theory, is a lighter duty occupation than she performed when injured. Although the plaintiff makes more income now than before the first accident, there is evidence that she is physically impaired, that she works in constant pain and that she works under lifting restrictions. Moreover, during the years 1991-1993, the plaintiff made less income than during the year when the first accident occurred. She now works 12-hour shifts and gets some overtime. Since 1990, there has been an annual hourly wage increase for all employees, regardless of physical limitations, who hold the same job as the plaintiff. Her current income is not a reliable indicator of her present earning capacity. The Court is satisfied from the evidence that the plaintiff has sustained a fifteen percent (15%) permanent and partial vocational impairment caused by the right shoulder injury for which she is entitled to compensation under § 25-5-57(a)(3)g., Code. . . .
 "The plaintiff attributed the physical problem with her left shoulder to the first accident. There is insufficient evidence to support this contention. The Court finds that the left shoulder injury resulted from the July 6, 1993 accident. Although Dr. Lemak assigned a permanent partial impairment rating of fifteen percent (15%) to the upper left extremity, he placed no new or additional restrictions on the plaintiff's work activities. The Court concludes that the plaintiff has sustained no permanent partial impairment of her earning ability on account of the left shoulder injury."
 The Neck Injury
It is undisputed that Brown's neck injury resulted from her first accident in 1990. In reviewing the trial court's findings as to that injury, we must first determine whether there is any legal evidence to support the *Page 27 
trial court's determination that the neck injury did not result in a permanent partial disability. Ex parte Eastwood Foods,Inc., 575 So.2d 91 (Ala. 1991). Then, if such evidence is found, this court must determine whether a reasonable view of that evidence supports the trial court's judgment. Ex parteVeazey, 637 So.2d 1348 (Ala. 1993).
We conclude that there was evidence to support the trial court's finding that Brown suffered no permanent partial disability from her neck injury and that a reasonable view of that evidence supports the trial court's judgment. Although Brown's physician stated that Brown had a 5 percent whole body impairment resulting from loss of motion in the neck, he explained that normally there is very little motion in that area of the cervical spine, and he stated that Brown could resume "full normal activities" without loss of function. That testimony supports the trial court's judgment that Brown's neck injury did not impair her ability to earn.
 The Right Shoulder Injury
It is also undisputed that Brown's right shoulder injury was caused by her 1990 accident. Accordingly, the standard of review established in Eastwood Foods, supra, and Veazey, supra, applies here. Using that standard, we conclude that the trial court's findings were supported by legal evidence and that a reasonable view of that evidence supports the judgment.
The measure of compensation for permanent partial disability is loss of earning capacity. U.S. Steel, A Div. of USX Corp. v.Nelson, 634 So.2d 134 (Ala.Civ.App. 1993). If an employee's post-injury wages are the same or higher than his pre-injury wages, a presumption arises that no loss of earning capacity has occurred. Id.
 " '[T]he presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. Unreliability of post-injury earnings may be due to a number of things; increase in general wage levels since the time of the accident; claimant's own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings.' "
Jim Walter Resources, Inc. v. Hall, 516 So.2d 690, 691
(Ala.Civ.App. 1987) (quoting 2 A. Larson, The Law of Workmen'sCompensation § 57.21(d)(1987)).
Here, the trial court's order found as a fact that independent evidence of incapacity rebutted the presumption that Brown had no loss of earning capacity. Cf. Ex parte ShererTimber Co., 684 So.2d 1289 (Ala. 1996) (when trial court's order found no such facts, its finding of a loss of ability to earn was not supported by the evidence).
The trial court concluded that Brown's post-injury earnings were an unreliable indicator of earning capacity because Brown works under physical restrictions and is in pain. SeeCanterbury Electric Co. v. Price, 555 So.2d 1064
(Ala.Civ.App.), cert. quashed, Ex parte Canterbury Electric Co.,555 So.2d 1066 (Ala. 1989) (presumption rebutted by testimony of employee that he worked in pain and under the influence of pain medication). Furthermore, the trial court had before it the testimony of a vocational expert who attributed to Brown a loss of earning capacity of more than 50 percent. U.S. Steel A Div.of USX Corp. v. Nelson, 634 So.2d 134 (Ala.Civ.App. 1993) (presumption rebutted by testimony of vocational expert that employee had a 54 percent loss of earning capacity).Chrysler Motor Corp. v. Cole, 563 So.2d 1040 (Ala.Civ.App. 1990) (presumption rebutted by testimony of employee who stated that after he returned to work he "could not lift as he used to" and by testimony of rehabilitation specialist that employee had a 25-30 percent loss of earning capacity).
The trial court also heard evidence that Brown's wage increase was due to a contract from which all union employees at Champion benefited. The trial court's findings on this issue are supported by the evidence and are due to be upheld.
 The Origin of the Left Shoulder Injury
The origin of Brown's left shoulder injury was disputed at trial. Brown maintained *Page 28 
that she injured her shoulder in the first (1990) accident; Champion argued that Brown injured her shoulder in the second (1993) accident. The trial court found that the second accident was the cause of Brown's left shoulder injury.[1] The origin of that injury is a pure question of fact.
Under the new Workers' Compensation Act, "[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). Substantial evidence is " 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' [West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)]; [Ala. Code 1975,] § 12-21-12(d)." Ex parte Trinity Industries,680 So.2d 262, 268 (Ala. 1996).
Brown did not complain to a physician of left shoulder pain after her 1990 accident. She first sought medical attention for the left shoulder injury after the 1993 accident. Based on those facts, we conclude that there was substantial evidence from which the trial court could infer that the 1993 accident caused Brown's left shoulder injury.
 The Result of the Left Shoulder Injury
The trial court decided that Brown "sustained no permanent partial impairment of her earning ability on account of the left shoulder injury." Pursuant to Ala. Code 1975, § 25-5-81(c), we must determine whether that decision is "based on a preponderance of the evidence as contained in the record of the hearing." We conclude that it is.
Although Brown's physician assigned a permanent partial impairment rating of 15 percent to the upper left extremity, he placed no new or additional restrictions on Brown's work activities. The trial court was not bound to accept the doctor's impairment rating and was free to make its own determination as to whether Brown was impaired. SeeChecker's Drive-In Restaurant v. Brock, 603 So.2d 1066, 1069
(Ala.Civ.App. 1992); Patrick v. FEMCO Southeast, Inc.,565 So.2d 644, 645 (Ala.Civ.App. 1990). Brown returned to work after the surgery on her left shoulder, with the same lifting restrictions that were permanently imposed after the surgery on her right shoulder. Under the circumstances, we hold that a preponderance of the evidence contained in the record of the hearing supports the trial court's judgment that the left shoulder injury resulted in no permanent partial disability.
 The Computation of Benefits
Champion maintains that Brown was entitled to no more than 300 weeks of permanent partial disability benefits and that, pursuant to § 25-5-57(a)(3)g., the trial court correctly deducted the number of weeks of temporary total disability paid to Brown for all injuries arising from the November 22, 1990,accident from the number of weeks payable to Brown for the permanent partial disability caused by her right shoulder injury. Brown, on the other hand, insists that she was entitled to as many as 700 weeks of permanent partial disability benefits because, she claims, the provisions of §25-5-57(a)(4)h. — rather than those of § 25-5-57(a)(3)g. — apply here.
Subsection (a)(4)h. applies when an employee has "receive[d] a permanent injury . . . after having sustained another permanent injury." Subsection (a)(4)h. does not apply in this case because Brown received only one injury that resulted in permanent partial disability. Compare Dutton v. Saginaw Div.,GMC, 634 So.2d 597 (Ala.Civ.App. 1994) (employee received two injuries, both of which resulted in permanent partial disability); Chrysler Motor Corp. v. *Page 29 Cole, 563 So.2d 1040 (Ala.Civ.App. 1990)(same).
Subsection (a)(3)g. applies to the computation of benefits in this case. That subsection provides:
 "When a permanent partial disability, compensation for which is not calculated by use of the schedule in subdivision (a)(3) of this section, follows a period of temporary total disability resulting from the same injury, the number of weeks of such temporary total disability shall be deducted from the number of weeks payable for such permanent partial disability. Compensation shall continue during disability, but not, however, beyond 300 weeks."
(Emphasis added.) The trial court correctly used subsection (a)(3)g. to compute benefits, but it erroneously deducted from Brown's permanent partial award the temporary total disability benefits paid for all injuries arising out of the November 22, 1990, accident. Instead, the trial court should have deducted only the temporary total benefits paid for the right shoulder injury. Section 25-5-57(a)(3)g. provides that, from the number of weeks payable for permanent partial disability shall be deducted the number of weeks of temporary total disability"resulting from the some injury." Although the harm to Brown's neck and the harm to Brown's right shoulder arose from the same "accident," they were not the same "injury." Compare the definition of "accident," at Ala. Code 1975, §25-5-1(7), with the definition of "injury" at Ala. Code 1975, § 25-5-1(9).
Here, Brown had three separate injuries and three separate periods of temporary total disability. She had, however, only one permanent partial disability — resulting from a right shoulder injury. Only the temporary total benefits paid for that same injury should have been deducted from her permanent partial award.
The judgment of the circuit court is affirmed in all respects, except as to its computation of benefits. The cause is remanded for a recomputation, consistent with the principles outlined in this opinion, of the amount of permanent partial disability due Brown.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur.
[1] We recognize that a finding that the injury was caused by the 1993 accident is also a finding that the injury was not caused by the 1990 accident. The question therefore arises under which statute — the old Workmen's Compensation Act or the new Workers' Compensation Act — we review that finding. We need not definitively answer that question, however, because we choose to review the finding under the New Act. If the finding is supported by "substantial evidence" (the "New Act" standard), then it is clearly supported by "any legal evidence" (the "Old Act" standard).