WRIGHT, Retired Appellate Judge.
Jean Fowler filed a complaint in the Jefferson County Circuit Court against Bruno’s Inc., seeking workmen’s compensation benefits. Fowler alleged that she injured her back in April 1992 in an accident arising out of and in the course of her employment. Bruno’s answered, asserting that Fowler’s claim was barred by the statute of limitations, that she had a pre-existing condition, that she had failed to give notice, and that she did not suffer an on-the-job injury.
Following oral proceedings, the trial court entered a judgment, stating, in pertinent part:

“FINDINGS OF FACT

“3. [Bruno’s] did not pay any temporary total disability benefits.
“4. [Fowler’s] average weekly wage in April 1992 was Two Hundred Forty Dollars and No/100 ($240.00) and her compensation rate was One Hundred Sixty Dollars and No/100 ($160.00) per week.
“5. [Fowler] did not receive any fringe benefits.
“6. [Fowler] was employed by [Bruno’s] during 1992 when she claims she injured her back. [Fowler] claimed that she was injured while lifting a shovel full of ice at [a Food World store operated by Bruno’s] while working behind the seafood counter. The court finds that [Fowler] did sustain an accident which arose out of and in the course of her employment with [Bruno’s] on April 7,1992.
*439 “7. The court further finds that [Fowler], who was fifty (50) years of age at the time of her employment-related accident and injury, claims that she is totally and permanently disabled from working. [She] testified that she has suffered from constant, extreme pain in her lower back and down into her left leg. [Fowler] testified that she cannot sit for long due to the extreme pain and that she is unable to work due to her constant pain.
“8. The court further finds that [Fowler] was treated by Donald H. Slappey, Jr., M.D., Edward U. Kissel, M.D., ... and Zenko Hrynkiw, M.D. Dr. Kissel treated [Fowler] with heat packs and medication. Dr. Slappey X-rayed [Fowler]; prescribed medication; and performed an MRI, mye-logram, and CAT scan of [Fowler’s] back. Dr. Hrynkiw performed an MRI, a bone scan, and subsequently back surgery on [Fowler]. Dr. Hrynkiw did not assign [Fowler] a permanent partial disability rating.
“9. [Fowler’s] vocational expert, Eddie Rice, testified at the trial of this case that he had reached a vocational loss of [45]% based on his evaluation of [Fowler], the medical records, and [Fowler’s] work history....
“10. [Fowler] testified that she graduated from high school and attended one year at Judson College. She also testified as to her work history. [Most of her life] she ... worked ... primarily jobs in the trucking industry ..., with a short stint at Food World where she was injured.
“11. The court finds that while [Fowler] has undoubtedly had a job related injury, ... she is not permanently and totally disabled.
“12. It is the finding and conclusion of this court, after having observed the witnesses, taking into consideration [Fowler’s] age, education, training, experience, vocational limitations, and after considering all of the evidence, that [Fowler] has sustained a permanent physical impairment as a result of her back injury, that she has reached maximum medical improvement, that she has suffered a loss of ability to earn, and [that she] has suffered a vocational disability as a result of those injuries, but that she is still capable of being employed. The court further finds that [Fowler’s] injury is to her body as a whole, which results in a forty-five percent (45%) reduction in her earning capacity as defined by Ala.Code 1975, § 25-5-57.
“13. Accordingly, [Fowler] is entitled to recover of [Bruno’s] an amount equal to sixty-six and two-thirds percent (66 2/3%) of the difference between her average weekly earnings at the time of her injury for a period of three hundred (300) weeks, since she was paid no TTD benefits.
“14. [Fowler] is entitled to receive weekly compensation benefits as follows: Two Hundred Forty Dollars ($240.00) per week (average weekly wage) times sixty-six and two-thirds percent (66 2/3%) times forty-five percent for a total of three hundred weeks.”
The trial court awarded benefits accordingly.
Bruno’s appeals, contending that Fowler failed to prove legal and medical causation, that the trial court erred in finding Fowler’s average weekly wage to be $240, and that the trial court erred in not crediting Fowler’s temporary total disability benefits against her permanent partial disability benefits.
Fowler’s injury occurred before August 1, 1992; therefore, the standard set forth in Ex parte Veazey, 637 So.2d 1348 (Ala.1993), applies. That standard is:
“Where one reasonable view of the evidence supports the trial court’s judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome.”
637 So.2d at 1349.
For an injury to be compensable under the Workmen’s Compensation Act, the injury must be caused by an accident arising out of and in the course of the employment. U.S. Steel v. Nelson, 634 So.2d 134 (Ala.Civ.App.1993). In order to prove that an accident occurred within the meaning of the Act, the employee must prove legal and medical causation. Id.
*440 In order to prove medical causation, an employee must show that the conditions, dangers, or risks of the job precipitated, or contributed to, the injury. Nelson. Testimony of medical doctors is not always necessary for a trial court to find medical causation. Ex parte Price, 555 So.2d 1060 (Ala.1989). Rather, the totality of the evidence, including both lay and expert testimony, may satisfy a showing of medical causation. Nelson.
The record reveals the following pertinent facts: On April 7, 1992, while closing the seafood department of a Food World grocery store, Fowler used a shovel to remove ice from the seafood showcase. She testified that she felt a sudden sharp pain in her back, dropped the shovel, and called the night manager, who told her to go home. Fowler testified that she has been in constant pain since the accident, that she had two back operations, and that her pain has worsened since 1992. She also testified that in April 1992, she earned $4.25 per hour and that she worked 40 hours per week.
Dr. Donald H. Slappey, Jr., an orthopedic surgeon, testified by deposition that he had treated Fowler and that a CT scan of Fowler’s back revealed three bulging discs at the lumbar level. Dr. Slappey related the disc bulges to degenerative disc disease. Dr. Slappey assigned Fowler a zero percent impairment.
Dr. Zenko Hrynkiw, a neurosurgeon, testified by deposition that he had treated Fowler and that an MRI revealed that Fowler had bulging discs at three levels. He testified that Fowler’s bulging discs worsened until a herniation occurred at L2-3 and that he surgically removed a left-side herniation. Dr. Hrynkiw testified that, approximately two months after surgery, Fowler said that her pain was worsening. A myelogram was performed, which revealed a recurrent disc herniation. He testified that he performed a second surgery to remove the remainder of the disc at L2-3, that Fowler continued to complain of pain, and that he referred her to a pain clinic. Dr. Hrynkiw further testified that Fowler’s disc could have herniated without any aggravation and that the bulging disc may have weakened over time and then herniated. He assigned Fowler a 14% permanent partial disability to the body as a whole and restricted her from climbing, crawling, and lifting anything over 30 pounds. Fowler’s vocational expert testified that Fowler has a 70% loss of access to jobs and a 45% vocational impairment.
After carefully reviewing the record, we find that the totality of the circumstances of this case supports the trial court’s finding that Fowler’s injury was compensable.
Bruno’s also contends that the trial court erred in determining Fowler’s average weekly wage.
The determination of the average weekly wage is governed by § 25-5-57(b), Ala.Code 1975. That section provides the following:
“Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained. Where by reason of the shortness of the time during which the employee has been in the employment of his employer ... it is impracticable to compute the average weekly earnings as above defined, regard shall be had to the average weekly amount which during the 52 weeks prior to the injury was being earned by a person in the same grade, employed at the same work by the same employer, and if there is no such person so employed, by a person in the same grade employed in the same class of employment in the same district.”
The employee has the burden of presenting evidence for computation of his average weekly wage. Godbold v. Saulsberry, 671 So.2d 80 (Ala.Civ.App.1994). When it is impracticable to apply the formulas for determining average weekly wage so as to arrive at a just and equitable result to both parties, the matter is left to the discretion of the trial court. Henderson v. Johnson, 632 So.2d 488 (Ala.Civ.App.1993).
In this case, the evidence of Fowler’s average weekly wage is limited to her testimony. She testified that in April 1992 she earned *441 $4.25 per hour and that she worked 40 hours per week. Multiplying those figures, this court arrives at an average weekly wage of $170; therefore, Fowler’s compensation rate was $113.82 per week (170 x 66 2/3% = $113.32). Consequently, we conclude that the trial court’s determination of Fowler’s average weekly wage is not supported by a reasonable view of the evidence and that its calculation of Fowler’s permanent partial disability benefits is in error.
Bruno’s further contends that the trial court erred by failing to deduct Fowler’s temporary total disability benefits from her permanent partial disability benefits.
Section 25-5-57(a)(3)g., Ala.Code 1975, as it read before the 1992 amendments, provided the following, in pertinent part:
“When a permanent partial disability, compensation for which is not calculated by use of the schedule in subdivision (a)(3)[a.] of this section, follows a period of temporary total disability resulting from the same injury, the number of weeks of such temporary disability shall be deducted from the number of weeks payable for such permanent partial disability. Compensation shall continue during disability, but not, however, beyond 300 weeks.”
The trial court found that Fowler did not receive temporary total disability benefits; however, at trial the parties stipulated that Bruno’s paid Fowler temporary total disability benefits of $93.81 per week for six weeks and two days. Therefore, we conclude that the trial court erred in failing to deduct six weeks and two days from 300 weeks. However, Bruno’s did not pay Fowler 66 2/3% of her average weekly wage for six weeks and two days, and Fowler is entitled to past-due temporary total disability benefits of $19.51 ($113.32 - 93.81 = $19.51) per week for that period.
Accordingly, we affirm that portion of the trial court’s judgment finding that Fowler sustained a compensable injury and a 45% loss of earning capacity. We reverse those portions of the judgment finding that Fowler’s average weekly wage was $240, finding that Bruno’s did not pay Fowler temporary total disability benefits, and calculating her permanent partial disability benefits. We remand this cause to the trial court to determine Fowler’s past-due temporary total disability benefits and to calculate Fowler’s permanent partial disability benefits, using an average weekly wage of $170 and deducting six weeks and two days from the 300 weeks awarded for permanent partial disability benefits.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result only.