838 So.2d 374 (2001)
AMERICAN COLOR GRAPHICS, INC.
v.
Rayfield FOSTER.
2000044.
Court of Civil Appeals of Alabama.
September 28, 2001.
*375 Barry V. Frederick and William D. Jones III of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham, for appellant.
Oscar H. Hale, Jr., Patrick Brett Hale, and Ashley Hale Rives of Hale & Associates, Montgomery, for appellee.
PITTMAN, Judge.
Rayfield Foster, the appellee, was injured in a workplace-related accident in 1997 and sued his employer, American Color Graphics, Inc. (hereinafter "ACG"), the appellant, for workers' compensation benefits. Prior to trial, ACG filed a motion in limine to exclude from introduction into evidence certain records and testimony. After a hearing on the motion the trial court reserved ruling on the motion until the contested evidence was offered at trial. At trial ACG again objected to the introduction of such evidence, but this time the trial court allowed the evidence to be admitted, reserving the right to exclude that evidence, if necessary, at a later time. At the end of both the presentation of Foster's case and of all the evidence, ACG presented its original and renewed motions for a judgment as a matter of law. The trial court denied the original motion, but noted ACG's objection and took the case under advisement as regards the renewed motion. Eventually the trial court issued an order essentially stating that it admitted into evidence the items contested in ACG's motions, denying ACG's motion to exclude, and finding that Foster was entitled to workers' compensation benefits for a permanent total disability. ACG now appeals. We affirm.
ACG raises two main issues on appeal:
(1) Whether the trial court erred in admitting into evidence certain medical records; and,
(2) whether the trial court erred in allowing into evidence the testimony of Foster's vocational expert.

I.
ACG contends that the trial court erred in admitting into evidence certain medical records. Specifically, it argues that the trial court erred in admitting into evidence medical records offered by Foster in lieu of personal testimony that his doctors and psychologists might have given at trial, when such medical records, as ACG argues, constitute inadmissible hearsay, admission of which it contends violates § 25-5-81(f)(4), Ala.Code 1975, Rule 44(h), Ala. R. Civ. P., and Rule 702, Ala. R. Evid.
*376 The Alabama Workers' Compensation Act (hereinafter "the Act") provides that an appellate court's review of the proof and its consideration of other legal issues shall be without a presumption of correctness. King Power Equipment, Inc. v. Robinson, 777 So.2d 723, 724-24 (Ala.Civ. App.2000), citing § 25-5-81(e)(1), Ala.Code 1975.

A.
ACG contends that certain medical records constitute inadmissible hearsay. ACG specifically argues that after Foster filed his lawsuit, his attorney sent him to three doctors and two psychologists to get their opinions on the extent of his alleged disability, and that the trial court improperly allowed to be entered into evidence medical reports from these evaluations without its requiring the doctors and psychologists who compiled the reports at issue to testify at trial. Essentially, ACG argues that these medical reports were improperly admitted into evidence because they constitute inadmissible hearsay. Although the doctors and psychologists who compiled the reports were not deposed and did not testify at trial, Foster sought to admit their reports into evidence and included them, as follows, in his proposed witness list:
"2. Robert F. Allen, M.D., by certified records....
"3. Paul Van Wyk, Ph.D., by certified records....
"4. Walid W. Freij, M.D., by certified records....
"5. Philip Golomb, M.D., by certified records....
"....
"7. Donald Blanton, Ph.D., by certified records...."
(C. 18.) The purpose of Foster's inclusion of these reports in his proposed exhibits at trial was because these reports were relied on, in part, by another of Foster's witnesses, Dr. Mike McClanahan. Dr. McClanahan, a vocational expert, testified at trial that he assigned Foster a vocational disability rating based on both his evaluation of the medical reports submitted to him by the aforementioned three doctors and two psychologists and on the basis of his own personal evaluation of Foster.
Before we can answer the question whether the disputed medical records constitute hearsay, we must first determine whether they were properly certified, as alleged by Foster in his proposed witness list, and admitted into evidence. Pertaining particularly to matters of discovery in workers' compensation cases, § 25-5-81(f), Ala.Code, 1975, states, in pertinent part:
"(f) Discovery. Methods of discovery shall be determined and established in rules promulgated by this amendatory act and the rules established by the Alabama Rules of Civil Procedure.... Additionally, the following rules of discovery shall apply to workers' compensation cases:
". . . .
"(4) Certified sealed copies of records of medical treatment and charges therefor, whether from a physician, hospital, clinic, or other medical provider, shall be authenticated in accordance with the Alabama Rules of Civil Procedure, Rule 44(h), without further need for authenticating testimony...."
Rule 44(h), Ala. R. Civ. P., states, in pertinent part:
"(h) Business Entries. Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible in evidence in proof of said act, transaction, occurrence, or event, if *377 it was made in the regular course of any business, profession, occupation or calling of any kind, and it was the regular course of the business, profession, occupation or calling to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter...."
Regarding the certification of the medical reports at issue, the trial transcript reveals the following colloquy:
"[ACG's trial counsel]: [Golomb's report]... consists of a one-page certification that does not meet the requirements of [Ala. R. Civ. P.] 44(h). All [the report] says is, `I hereby certify that the attached is a true and correct copy of the medical records kept on file in my office.' Says nothing about made or kept in the regular course of business whatsoever, unlike some of the other certifications offered by [Foster]. And attached to that front page is three pages of records, one of which is marked a physical capacities evaluation, and then there is two pages of appears to be handwritten notes....
"... [Exhibit] 2 consists of a one-page certification that more tracks the Rule 44(h), comparative to [Golomb's report], with a three-page report attached....
". . . .
"... [A]t least as to [the Freij, Van Wyk, and Golomb reports], the certifications themselves do not authenticate the records as required by [§ 25-5-81(f)(4)] and Rule 44(h). They don't purport to even remotely track the language as required to authentication. So, as to those exhibits, they have not been authenticated, and because we don't believe those are business records within the business records exception to hearsay rule, we would contend that all of these [medical records] have not been authenticated....
". . . .
"... [The certification on the Golomb report] says a true and correct copy of the medical records kept on file in my office. That's the whole certification, if you want to call that a certification.... Dr. Allen himself signed a certification... that tracks [the certification language in] Rule 44(h)."
(R. 21-23, 27-29.) Looking to the certification language used on the face of the exhibits, themselves, we determine that the language stated on some of the exhibits does not comport with the requirements of § 25-5-81(f)(4) or Rule 44(h), Ala. R. Civ. P. On the cover of plaintiff's exhibit 1, the independent medical evaluation conducted by Dr. Freij on July 20, 1999, appears the following attempted certification language: "I hereby certify that the attached is a true and correct copy of the medical records kept on file in said office." The attempted certification language that appears on the cover sheets of plaintiff's exhibit 4 (psychological evaluation conducted by Dr. Paul Van Wyk) and plaintiff's exhibit 6 (the physical capacities evaluation of Dr. Philip Golomb) exactly copies the language appearing on the cover sheet of plaintiff's exhibit 1. Because none of the language on any of these documents reference that these reports were compiled in the regular course of business and at a time consistent with the regular course of business, we conclude that their certifications fail and they were improperly admitted into evidence. See § 25-5-81(f)(4) and Rule 44(h), Ala. R. Civ. P.
However, on several of the exhibits sought to be admitted by Foster into evidence, the language appears to comply with § 25-5-81(f)(4) and Rule 44(h), Ala. R. Civ. P. Plaintiff's exhibit 1(A), another independent medical evaluation by Dr. Freij, this one conducted on November 23, 1999, states on its cover page:

*378 "I hereby certify and affirm in writing that the attached is a true and complete copy of the records regarding treatment of Rayfield Foster, which are kept in the office of Walid W. Freij, M.D., in my custody and control. I further certify that I am the legal custodian and keeper of the records. The attached records were made in the regular course of business and it was in the regular course of business for such records to be made at the time of the events, transactions, or occurrences to which they refer, or within a reasonable time thereafter."
(Plaintiff's exhibit 1(A).) Plaintiff's exhibit 2 (the independent medical examination report of Dr. Robert Allen, conducted on January 14, 1999), plaintiff's exhibit 2(A) (the independent medical evaluation conducted by Dr. Allen on June 28, 1999), and plaintiff's exhibit 3 (psychological evaluation conducted by Dr. Donald Blanton on November 23, 1999) contain essentially the same certification language. Therefore, from a cursory look at the linguistics of the certifications, it would appear that these medical reports were indeed properly certified.
Despite the foregoing, we must conclude that plaintiff's exhibits 1(A), 2, and 3 were improperly admitted into evidence. Section 25-5-81(f)(4) contains two distinct requirementscertification and seal. Although these reports appear to contain the proper certification language, they do not appear to be sealed. Therefore, we must conclude, as a procedural matter, that plaintiff's exhibits 1(A), 2, and 3 were all improperly admitted into evidence.
However, one exhibitplaintiff's exhibit 2(A) (the independent medical examination conducted by Dr. Allen on June 28, 1999)escapes unscathed. This medical report is the one piece of evidence Foster presented at trial that manages to satisfy all of the requirementsboth certification and sealof § 25-5-81(f)(4) and Rule 44(h), Ala. R. Civ. P. Therefore, as a procedural matter, the trial court properly admitted plaintiff's exhibit 2(A) into evidence.

B.
ACG contends, as a substantive matter, that the trial court improperly admitted Foster's exhibits into evidence because they constitute inadmissible hearsay. We reiterate our decision that the only exhibit offered by Foster which passes procedural muster for proper certification and seal is exhibit 2(A). ACG specifically contends, as it applies to that one medical report, that it constitutes inadmissible hearsay because: (1) the report was prepared in anticipation of litigation, thereby violating the business records exception to the hearsay rule; and, (2) the report was compiled by a physician who was not qualified, under Rule 702, Ala. R. Evid., before the trial court as an expert witness.
ACG contends that Dr. Allen's medical report, plaintiff's exhibit 2(A), was prepared in anticipation of litigation, thereby violating the business records exception to the hearsay rule.
Rule 801(c), Ala. R. Evid., states that "hearsay" is defined in pertinent part as a "statement, other than one made by the declarant while testifying at trial, ... offered in evidence to prove the truth of the matter asserted." Dr. Allen's medical report constitutes hearsay because it is a statement offered out of court. Rule 802 states that hearsay is not admissible except as provided in the enumerated exceptions to the hearsay rules, as listed in the Alabama Rules of Evidence. Rule 803, which lists the exceptions, states, in pertinent part:

*379 "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
". . . .
"(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
Plaintiff's exhibit 2(A), the medical report on the follow-up examination conducted by Dr. Allen, appears to constitute a statement made for medical diagnosis or treatment, as defined by Rule 803(4). The report, dated June 28, 1999, states that Foster, who worked for 22 years as a pressman for Sullivan Graphics, was injured in the course of his employment on August 18, 1997,[1] when a trap door on the catwalk ladder on which he was working swung open and threw him off balance. (See plaintiff's exhibit 2(A).) The report states that although at the time of this incident Foster felt a pulling sensation in his left side, he kept working anyway. The next day he began to suffer from stiffness, pain, and pressure in his lower back with radiation to his left leg. A company doctor examined Foster and prescribed to him several days of rest. Foster's injury was eventually evaluated by other doctors, each of whom returned Foster to work. However, Foster, himself, eventually stopped working. He developed left foot drop and had a myelogram and CT scan performed, which indicated a large disc herniation to the left of the midline at the L5-S1 level. The report stated that surgery was performed by Dr. Randolph George on November 20, 1997, and that Dr. George's medical report indicated that a large extruded disc fragment completely filled the left L5-S1 neural foramen. Prior to surgery a second opinion was given by a neurologist.
Dr. Allen's report states that after the surgery, Foster continued to complain of pain, including soreness in his hamstring and groin muscles, frequency in urination, decreased sexual function, constipation with rectal bleeding, parethesias in the left leg, and burning, stinging and cramping in his left great toe. A postoperative myelogram and CT scan on November 20, 1998, indicated resolution of the disc herniation. Since the injury Foster suffered from weight gain due to inactivity and profound depression, which was evaluated by a psychologist.
The report also details Foster's medical history, including surgical history, and the results of his examination by Dr. Allen. Dr. Allen's report also repeats the findings of a functional capacities evaluation conducted on February 19, 1998, at the Center for Occupational Rehabilitation and Evaluation, Inc., in Birmingham, which indicated that Foster's physical capabilities should be limited to lifting, pushing, pulling, and carrying only loads as heavy as 50 pounds and on an occasional basis only. The report concludes with Dr. Allen's impressions from the evaluation he conducted:
"1. Traumatic lumbar disc herniation to the left at the L5-S1 level on 08/18/97, caused by an injury at work. Disc herniation was significant and resulted in left foot drop. Patient was surgically treated and has residual symptoms of pain and muscle weakness with clinical findings of muscle weakness, loss of pertinent reflex and sensory deficits in the left leg. These neurological deficits are in all likelihood permanent and limit his functions. Specifically, he is limited in regard to lifting, bending, stooping, carrying, *380 walking, sitting, crouching, kneeling, climbing, working at heights and also has symptoms of sexual dysfunction, bladder and bowel irregularities.
"2. Depression, secondary to job and social losses, and chronic pain.
"3. Past history of right lumbar surgery, fully recovered by his estimate, and without residual impairments from the 1988 injury or surgery."
(Plaintiff's exhibit 2(A).) We conclude that Dr. Allen's medical report constitutes a statement made for purposes of medical diagnosis or treatment, describing Foster's medical history, past and present symptoms, pain, sensations, and the inception or general character of the cause or external source thereof, as defined in Rule 803(4). Therefore, as a cursory matter under Rule 803(4), plaintiff's exhibit 2(A) appears to be hearsay that is admissible under an exception.
However, ACG specifically objects to the admission of Dr. Allen's medical report on basis of the grounds stated in Rule 803(6). Subsection (6) of Rule 803, the so-called "business records exception," states, in pertinent part, that the following items are admissible, even if they constitute hearsay:
"(6) Records of Regularly Conducted Activity. A ... report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and it was the regular practice of that business activity to make the ... report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness...."
The comments to Rule 803(6) state:
"Not only must the record be relevant to regularly conducted business, but it must be shown that the generation of such a record is a regularly conducted activity of the business. It is this latter requirement that has caused courts to exclude certain records made solely in anticipation of, and in preparation for, pending litigation. See, e.g., United States v. Kim, 595 F.2d 755, 761 (D.C.Cir.1979)."
(Emphasis added.)
We first note that according to the case action summary, Foster filed his case on April 8, 1999. Plaintiff's exhibit 2(A), the medical examination report of Dr. Allen, is dated June 28, 1999almost three months after he first filed his complaint. See plaintiff's exhibit 2(A). Furthermore, in support of its motion in limine, ACG submitted to the trial court a copy of Foster's deposition, in which he admitted that although he visited Dr. Allen on a number of occasions after he had back surgery in 1997 and although he paid for his consultations through his wife's insurance, he was referred to Dr. Allen by his own attorney. Although Dr. Allen's report constitutes a statement "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof and, according to its certification, constitutes a report of conditions, opinions, or diagnoses, made the day of the examination by Dr. Allen, certified by the custodian of records within one day thereafter, allegedly kept in the course of regularly conducted medical business, in the regular practice of medical evaluators to make such report, all as shown by the certification of the custodian of records *381 and the sealing thereof by a notary public, we are not as convinced that the source of the information does not indicate a lack of trustworthiness in the sense that it has been prepared solely in anticipation of, and preparation for, litigation. See Rule 803(4) and (6), and comments to Rule 803(6). Given the fact that the date of Dr. Allen's evaluation and Foster's own testimony that it was his attorney who sent him to Dr. Allen for consultation, we cannot conclusively say that plaintiff's exhibit 2(A) was not prepared in anticipation and preparation for the lawsuit Foster filed against ACG. Thus, we conclude that Dr. Allen's medical report constitutes inadmissible hearsay; the trial court erred in admitting plaintiff's exhibit 2(A) into evidence. However, in light of our conclusion as to the second issue, below, we determine that the trial court's admission of Dr. Allen's medical reportas well as its admission of plaintiff's exhibits 1, 1(A), 2, 3, 4, and 6into evidence constitutes harmless error. Rule 45, Ala. R.App. P., states in pertinent part:
"No judgment shall be reversed or set aside, nor new trial granted in any civil... case on the ground of ... the improper admission ... of evidence, ... unless in the opinion of the court to which the appeal is taken ..., after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected the substantial rights of the parties."
Our review of the record indicates that because, as we determine below, Dr. McClanahan, despite his partial reliance on the inadmissible medical reports in evaluating Foster's condition and presenting his testimony, has sufficient personal knowledge of Foster's situation to justify the admission into evidence of his testimony, we do not believe that the admission into evidence of the inadmissible medical reports referenced above "probably injuriously affected the substantial rights of the parties."
Because we conclude that Dr. Allen's medical report constitutes inadmissible hearsay and because his report was the only testimony of his sought to be admitted at trial, we need not discuss whether he was properly qualified as an expert witness under Rule 702, Ala. R. Evid.

II.
Despite our resolution of the foregoing issue, we must still determine if, as ACG contends, the trial court erred in allowing into evidence the testimony of Foster's vocational expert, Dr. McClanahan. Specifically, ACG argues that the decision to allow into evidence the testimony of Foster's vocational expert was error because the testimony presented by the expert witness was based on inadmissible medical records offered by Foster. Although we determined, above, that the medical reports, themselves, for various reasons ranging from improper certification and seal to constituting inadmissible hearsay, were improperly admitted into evidence, we must still determine if Dr. McClanahan's testimony, in which he relied on his evaluation of those medical reports and on his personal evaluation of Foster, was properly admitted into evidence.
We reiterate that the Act provides that an appellate court's review of the proof and its consideration of other legal issues shall be without a presumption of correctness. Robinson, supra, citing § 25-5-81(e)(1), Ala.Code 1975. In regard to the effect of the admission of testimony based on inadmissible hearsay, in Nor, Inc. v. Smith, 519 So.2d 534, 535-36 (Ala.Civ.App. 1987), this Court held that in a workers' compensation case, the employer's argument that a vocational expert's testimony *382 regarding his opinion of the worker's loss of earning capacity which was based in large part on his personal examination of the worker, but also on inadmissible medical testimony, was without merit. In Dutton v. Saginaw Div., General Motors Corp., 634 So.2d 597 (Ala.Civ.App.1994), Saginaw contended that the trial court erred in allowing into evidence both portions of the vocational expert's deposition containing opinion testimony concerning the worker's vocational disability and the vocational expert's written reports because, as it argued, some of the sources on which the vocational expert based his opinion and reports had not been entered into evidence. Those sources upon which he relied in part included a medical report compiled by another physician, a physical capacities evaluation compiled by another clinic, and a computer program, none of which were admitted into evidence. This Court held that Saginaw's argument failed because the vocational expert stated in his deposition that he also relied on two interviews, each lasting approximately one hour, he personally conducted with the worker. We reiterated that at the discretion of the trial court, expert witnesses may be allowed to testify based in part on hearsay. Dutton, supra, quoting E & S Facilities, Inc. v. Precision Chipper Corp., 565 So.2d 54, 63 (Ala.1990). Therefore, we concluded that it was within the trial court's discretion to allow into evidence both the opinion testimony contained in the vocational expert's deposition and his report, which reflected that opinion.
Our review of the record indicates that although part of the basis of Dr. McClanahan's testimony regarding his opinion as to Foster's vocational disability rating consisted of medical records which we have decided constitute inadmissible hearsay, his testimony is still admissible. Dr. McClanahan testified during trial that in addition to reviewing the medical reports compiled by Foster's other physicians, he himself spent about one hour interviewing Foster and helping him complete a nine-page vocational interview form, as well as conduct a three and one-half hour comprehensive vocational evaluation on Foster on a day when he was in pain. Included in this comprehensive evaluation is academic and vocational testing, using the Wide Range Achievement Test (Third Division) and the Kaufman's Brief Intelligence Test, a personal assessment via the Wonderlic Test, a dexterity assessment employing the Sage System Scale, a depression assessment via the Zung Depression Self-Rating Scale, and a Visual Analogue Pain Rating Scale assessment. Dr. McClanahan testified that Foster tested on the "lower end" of the average I.Q. range with a score of 91,[2] and slightly below average on the dexterity assessment. Dr. McClanahan stated that he found the dexterity assessment score odd in light of Foster's history of past work, most of which involved intensive hand, finger, and upper extremities exercises, but reasoned that this low score was consistent with Foster's experience with long-term pain. The Zung analysis indicated that Foster suffers from severe to extreme depression; although this test was administered by Dr. McClanahan, he stated that such findings were also consistent with the psychological analyses conducted by Dr. Blanton and Dr. Van Wyk. Dr. McClanahan stated that Foster scored levels of five to seven (with zero being an absence of pain and ten being excruciating pain) on the Visual Analogue Pain Rating Scale assessment. He *383 explained that a rating of five indicates a moderate level of pain and that a level of seven or higher (which Foster complained of occasionally) is considered to be occupationally debilitating due to the effect extreme pain has on one's concentration, persistence and pace. Dr. McClanahan stated that Foster informed him that at one time he contemplated suicide as a result of the pain he suffered from his injury.
Dr. McClanahan testified that when he asked Foster during his interview what Foster, himself, thought was a reasonable (not maximum) level of physical activity for him, considering his pain, Foster answered sitting for 30 minutes, standing for 10 minutes, walking 400 yards, driving 45 minutes, lifting 15 to 20 pounds, and climbing one to two flights of stairs. Foster informed him that crouching, kneeling, stooping, crawling, and reaching overhead were all very painful to him. During cross-examination, Dr. McClanahan was asked if, in making his determination of Foster's vocational disability rating, he was relying on the information contained in the medical reports of psychologists who examined Foster for just a few hours before rendering their evaluation of his condition, Dr. McClanahan answered that he considered those reports and found them to be credible in light of his own evaluation of Foster. Dr. McClanahan specifically testified that Foster's own comments on his condition constitutes one of several "significant" factors on which he based his opinion.
Dr. McClanahan was questioned about medical evaluations by some physicians which, when interpreted by Dr. McClanahan, revealed that Foster was capable of doing physical labor greater than that of which he informed Dr. McClanahan, but he stated that these conflicting test results would not change his opinion as to Foster's level of vocational disability. Dr. McClanahan was also asked why he dismissed certain diagnoses offered by other physicians, including that of Dr. Randolph George, Foster's primary treating physician, in favor of those upon which he based in part his opinion as to Foster's vocational disability rating. Dr. McClanahan explained that the unfavorable diagnoses did not appear to be consistent with his interpretation of Foster's MRIs, X-rays, and CAT scans. Dr. McClanahan stated that although Foster displays the intelligence to be retrained, and that the moderate level of pain he experiences most of the time is not vocationally disabling, his ability to be retrained for a different job function would depend on what type of retraining he would have to undergo and how much pain it would cause him. Dr. McClanahan testified that it was his opinion that Foster needed to reduce the level of pain he was currently experiencing before he could truly benefit from retraining. He further stated that Foster's ability to be gainfully re-employed depended on him recovering enough physically to endure a normal work schedule. Dr. McClanahan testified that his opinion that Foster is 100% vocationally disabled is influenced by Foster's having to lie down due to pain for three to four hours a day during the hours of 8 A.M. to 5 P.M.
As was the case in Smith, the record in this case reveals that Dr. McClanahan's testimony was based in part on his personal evaluation of Foster. Furthermore, the mere fact that the medical reports on which Dr. McClanahan relied in part in forming his opinion were not admitted into evidence should not prevent the admission of his testimony, which was also based on his personal evaluation of Foster. See Dutton, supra. Thus, the trial court's decision to allow Dr. McClanahan to testify, even though his testimony was partly based on hearsay, does not constitute an *384 abuse of discretion. See Dutton, supra, quoting E & S Facilities, Inc., supra.

III.
In conclusion, we determine that the trial court erred in improperly admitting into evidence plaintiff's exhibits 1, 4, and 6 because they were not properly certified. The trial court further erred in admitting into evidence plaintiff's exhibits 1(A), 2, and 3 because although those documents were properly certified, they were not sealed in accordance with the requirements of § 25-5-81(f)(4). Despite the fact that plaintiff's exhibit 2(A) is the only exhibit to meet the requirements of both proper certification and seal, the trial court erred in admitting that document into evidence because the record indicates that it constitutes inadmissible hearsay for its failure to meet all of the requirements for admission under the business records exception to the hearsay rule. Despite the foregoing, we conclude that the admission into evidence of plaintiff's exhibit 2(A)as well as plaintiff's exhibits 1, 1(A), 2, 3, 4 and 6constitutes harmless error, because notwithstanding Dr. McClanahan's reliance on Dr. Allen's medical report in formulating his own opinion as to the level of Foster's vocational disability, the record reveals that he demonstrated enough independent judgment regarding his own evaluation of Foster to justify the admission of his testimony into evidence.
AFFIRMED.
YATES, P.J., and CRAWLEY, J., concur.
THOMPSON and MURDOCK, JJ., dissent.
MURDOCK, Judge, dissenting.
The evidence presented by the employee to support his claim of total permanent disability in this workers' compensation case included written reports containing expert-opinion testimony from three medical doctors and two psychologists whom the employee consulted after filing his lawsuit. The trial court admitted each of these reports into evidence over valid hearsay and related objections of the employer and, in its judgment, clearly indicated that it had relied upon the reports and found them persuasive.[3] The employee also called as a witness at trial a vocational expert who based his opinion in part on those written reports.
The employer introduced the deposition testimony of the employee's treating physician and called as witnesses at trial a physical therapist, two vocational experts, and an occupational therapist. This evidence tended to show that the employee was not disabled and, thus, conflicted with the evidence introduced by the employee.
In Odell v. Myers, 52 Ala.App. 558, 295 So.2d 413 (Ala.Civ.App.1974), we said:
"It is the rule, in a case at law tried without a jury that admission of illegal evidence over objection requires a reversal unless the remaining evidence is without conflict and sufficient to support the judgment. Pfingstl v. Solomon, et al., 240 Ala. 58, 197 So. 12; Robinson v. Solomon Bros. Co., 229 Ala. 137, 155 So. 553.
"We have before us several instances of admission of illegal evidence over strong objection with specifically stated grounds.... The remaining evidence is not without conflict and we are bound to the conclusion that the trial court considered *385 at least some of the admitted illegal evidence. The influence such consideration had on the court's finding of fact and conclusions of law is an unknown quantity. We do not believe a judge sitting as a trier of fact should be permitted to consider illegal evidence any more than should a jury. Our belief in this principle is greatly strengthened in this case by the several instances of admission of illegal evidence admitted over specific and extended objection. In view of the ... presumption ... that the court considered illegal evidence, because of overruling of objections, Bessemer Theatres v. City of Bessemer, 261 Ala. 632, 75 So.2d 651, it is our opinion that the judgment of the court should be reversed and the case remanded for a new trial and judgment free from influence of illegal evidence."
52 Ala.App. at 562, 295 So.2d at 415.
The only appreciable difference between Odell and the present case is that in Odell this court presumed that the trial court had considered the illegal evidence. In the present case, the trial court expressly stated in its judgment that it had considered the illegal evidence.
Accordingly, I must respectfully dissent. In my opinion, this case must be remanded for a new trial.
THOMPSON, J., concurs.
NOTES
[1] Although the report indicates that the injury occurred on August 18, 1997, it actually occurred on August 22, 1997.
[2] Dr. McClanahan testified that his assessment of Foster's IQ conflicted with Dr. Blanton's assessment, which indicated that Foster suffers from mild-range mental retardation. (R. 149-150.)
[3] I therefore cannot conclude, as the majority does, that the admission of these reports into evidence was harmless error.