838 So.2d 385 (2002)
Ex parte AMERICAN COLOR GRAPHICS, INC.
(In re American Color Graphics, Inc. v. Rayfield Foster.)
1010180.
Supreme Court of Alabama.
May 24, 2002.
*386 Barry V. Frederick and William D. Jones III of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham, for petitioner.
Oscar H. Hale, Jr., and Ashley Hale Rives of Hale & Associates, Montgomery, for respondent.
PER CURIAM.
This case concerns the nature and extent of an on-the-job back injury Rayfield Foster sustained while he was working for American Color Graphics. The Court of Civil Appeals affirmed the trial court's judgment finding that Foster had suffered a permanent total disability under the Workers' Compensation Act. American Color Graphics, Inc. v. Foster, 838 So.2d 374 (Ala.Civ.App.2001). We reverse.

Facts
Rayfield Foster injured his back on August 22, 1997, while working at American Color Graphics ("ACG"); he had worked for ACG for over 20 years. As a result of the injury, Foster received temporary disability benefits for 28 weeks. Foster sued ACG on April 7, 1999, seeking permanent disability benefits. The issue at trial concerned the nature and extent of Foster's disability.
A CAT scan performed after the injury revealed a large herniated disk in Foster's back. Dr. Randolph George, a neurosurgeon, performed surgery to repair the herniated disk. Over the next several months Foster made several visits to Dr. George, complaining of pain in his left leg and other places, but Dr. George was unable to pinpoint a medical reason for the pain; he determined that Foster was capable of working again. Physical therapist Vicki Patrick performed a functional-capacity evaluation of Foster in February 1998 and concluded that Foster could perform a "limited medium level of work" at that time. An occupational therapist, Joe Willard, performed another functional-capacity evaluation on Foster in February 1999; the result of that evaluation was a finding that Foster fit "very well within the medium to even heavy work classification."
After he filed the underlying action, Foster visited Dr. Walid Freij, Dr. Robert Allen, and Dr. Philip Golomb, all of whom concluded that Foster was physically incapable of working. He also visited two psychologists, Dr. Paul Van Wyk and Dr. Donald Blanton; based on one visit, they each found Foster to be too depressed to work. Each of these physicians and psychologists prepared reports on their evaluations of Foster; those reports were submitted to the court.
Before trial, ACG filed a motion in limine to prevent Foster from introducing into evidence the records of the three doctors and two psychologists Foster visited after he filed this action, as well as the testimony of Foster's vocational expert, on the grounds that that evidence constituted inadmissible hearsay. The trial court reserved ruling on the motion in limine until *387 the evidence was offered at trial. At trial, ACG again objected to the introduction of the evidence, but the trial court allowed the evidence to be admitted, reserving the right to exclude it, if necessary, at a later time.
At the conclusion of Foster's case-in-chief and again at the conclusion of all of the evidence, ACG presented an original and a renewed motion for a judgment as a matter of law. The trial court rejected the first motion, but took the renewed motion under advisement. Eventually, however, the trial court issued an order admitting the evidence and finding that Foster had suffered a permanent total disability for which he was entitled to workers' compensation benefits.
Foster's attorney presented the findings of the doctors and psychologists who had evaluated Foster in the form of certified records, not through testimony. Foster's vocational expert, Dr. Michael McClanahan, testified at trial. Foster's attorney asked Dr. McClanahan to express his opinion about Foster's disability based upon those certified records.
The Court of Civil Appeals held that the trial court erred in admitting those medical records, but nonetheless in a 3-2 decision affirmed the trial court's finding that Foster was entitled to permanent-total-disability benefits, concluding that the admission of the records was "harmless error." 838 So.2d at 384. The Court of Civil Appeals explained that result by saying that Dr. McClanahan "demonstrated enough independent judgment regarding his own evaluation of Foster to justify the admission of his testimony into evidence." 838 So.2d at 384.
ACG contends that the Court of Civil Appeals' affirmance of the trial court's holding that Foster is entitled to permanent-total-disability benefits conflicts with that court's decision in Odell v. Myers, 52 Ala.App. 558, 295 So.2d 413 (1974), because ACG believes that the Court of Civil Appeals did not properly weigh the evidence after it held that the medical records offered by Foster should not have been admitted. Specifically, it argues that Odell held that a reversal is required where illegal evidence is improperly admitted, unless the remaining evidence is without conflict and supports the trial court's holding. See Odell, 52 Ala.App. at 562, 295 So.2d at 415. In this case, the remaining evidence did contradict the finding that Foster had suffered a permanent disability, ACG contends, and consequently, the Court of Civil Appeals should have reversed the trial court's judgment in favor of Foster.
In support of its holding, the Court of Civil Appeals cited Rule 45, Ala. R.App. P. Rule 45 provides:
"No judgment may be reversed or set aside, nor new trial granted in any civil... case on the ground of ... the improper admission ... of evidence, ... unless in the opinion of the court to which the appeal is taken ..., after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected the substantial rights of the parties."
The Court of Civil Appeals stated that it did not believe the admission of the inadmissible evidence "`probably injuriously affected the substantial rights of the parties,' " because it believed that Dr. McClanahan had "sufficient personal knowledge of Foster's situation to justify the admission into evidence of his testimony." 838 So.2d at 381.

Analysis
Initially, we note that the Alabama Workers' Compensation Act, § 25-5-50 et seq., Ala.Code 1975, provides that an appellate court's review of the proof and consideration of other legal issues in a *388 workers' compensation case shall be without a presumption of correctness. See § 25-5-81(e)(1), Ala.Code 1975. The Court of Civil Appeals found that the trial court's admission of the medical records prepared by the three doctors and two psychologists Foster's attorney sent Foster to was error. The Court of Civil Appeals concluded that several of the records were not properly certified according to § 25-5-81(f), Ala.Code 1975, and Rule 44(h), Ala. R. Civ. P. See American Color Graphics, 838 So.2d at 384. It found other of the records inadmissible because they were not sealed, as is required by § 25-5-81(f)(4). 838 So.2d at 384. One of the medical records was properly certified and sealed, but it failed to qualify under the "business-records exception" of the hearsay rule, Rule 803(6), Ala. R. Evid., because the court found that it appeared to have been prepared solely in anticipation of litigation.[1]American Color Graphics, 838 So.2d at 384. We find no fault with these conclusions by the Court of Civil Appeals.
Aside from those records, Foster's only other evidence of permanent total disability was the testimony of Dr. McClanahan, who relied for the most part on the improperly admitted medical records to form his opinion. The record shows that Dr. McClanahan's testimony that Foster was totally disabled was not based on his independent findings. He never provided that testimony without referring to the medical records that had been erroneously admitted into evidence, nor did he express an independent opinion on Foster's disability status based upon his evaluation of Foster. Moreover, Dr. McClanahan is not a medical doctor, a psychologist, or a psychiatrist. He holds a Ph.D. degree in rehabilitation services; thus, he was not qualified to render an expert medical opinion as to the extent of Foster's disability, nor did Foster claim at trial that Dr. McClanahan was qualified to do so. All of the tests performed by Dr. McClanahan, with the exception of the dexterity test, were in the form of surveys and questionnaires; he did not administer any tests to determine Foster's medical condition. For that information, Dr. McClanahan consulted the inadmissible medical reports.
The Court of Civil Appeals cited Nor, Inc. v. Smith, 519 So.2d 534 (Ala.Civ.App. 1987), and Dutton v. Saginaw Division, General Motors Corp., 634 So.2d 597 (Ala. Civ.App.1994), as support for its finding that a vocational expert's testimony is admissible even though the expert relies on some material not in evidence as the basis for his or her opinion, so long as the opinion is also based upon the expert's own evaluation of the worker. The Court of Civil Appeals explained in detail the evaluation Dr. McClanahan performed on Foster, as well as the conclusions he purportedly drew from it, 838 So.2d at 382-84, and found his testimony sufficient to render his partial reliance on the inadmissible records to be harmless.
This conclusion, however, ignores the trial court's interpretation of Dr. McClanahan's testimony. The trial court explicitly stated that Dr. McClanahan's opinion that Foster was 100% disabled was "based on Dr. McClanahan's review of [Foster's] medical records," that is, those records the Court of Civil Appeals determined to be inadmissible evidence. The trial court's order clearly relied solely on the inadmissible evidence together with *389 Dr. McClanahan's testimony in determining that Foster had suffered a permanent total disability. For example, the trial court observed that Foster "introduced numerous reports and medical records concerning his work-related injury. Specifically, those records and reports considered by Dr. McClanahan in developing his opinions were submitted into evidence. The Court finds these records and reports quite compelling." (Emphasis added.) The trial court's reliance on this evidence precludes the possibility that its admission was harmless error.
ACG argues that in this type of situation, Odell commands a reversal by the appellate court because the trial court relied on inadmissible evidence in making its decision. In Odell, the trial court found that an employee had sustained a 35% permanent partial disability. The trial included, in the words of the Court of Civil Appeals, "several instances of admission of illegal evidence over strong objection with specifically stated grounds." Odell, 52 Ala. App. at 562, 295 So.2d at 415. The Court of Civil Appeals determined that
"[t]he remaining evidence is not without conflict and we are bound to the conclusion that the trial court considered at least some of the admitted illegal evidence. The influence such considerations had on the court's finding of fact and conclusions of law is an unknown quantity. We do not believe a judge sitting as a trier of fact should be permitted to consider illegal evidence any more than should a jury. Our belief in this principle is greatly strengthened in this case by the several instances of admission of illegal evidence admitted over specific and extended objection."
Id.
In this context, the Court of Civil Appeals stated:
"It is the rule, in a case at law tried without a jury that admission of illegal evidence over objection requires a reversal unless the remaining evidence is without conflict and sufficient to support the judgment. Pfingstl v. Solomon, et al., 240 Ala. 58, 197 So. 12 [ (1940) ]; Robinson v. Solomon Bros. Co., 229 Ala. 137, 155 So. 553 [ (1934) ]."
Id. (Emphasis added.) The Court of Civil Appeals reversed the judgment of the trial court and remanded that case for a new trial.
In opposition to Foster's evidence, ACG presented the testimony of Foster's treating physician, Dr. Randolph George; vocational expert Ralph Richards; physical therapist Joe Willard; and occupational therapist Gary Scoggins. All of the evaluations performed by these witnesses concluded that Foster was capable of returning to work and that he had not sustained a permanent disability. Thus, the evidence presented by ACG contradicted the evidence presented by Foster. While Dr. McClanahan's testimony can be viewed as presenting some evidence of disability, it is certainly not sufficient to support the trial court's finding in the face of the contrary evidence.
Even so, we need not determine which party presented the more reliable evidence. It is only necessary to observe that the evidence upon which the trial court based its decision was erroneously admitted, a fact which calls that decision into question. Once the inadmissible evidence is excluded, the only remaining evidence that supports Foster's position is Dr. McClanahan's testimony and evaluation. Yet he never independently concluded that Foster was permanently disabled; therefore, that evidence is far from sufficient to support the judgment of the trial court. Thus, the prudent course, as Odell reminds us, is to reverse the trial court's *390 judgment and remand the case for a new trial, free from influence of the illegal evidence. Therefore, we reverse the judgment of the Court of Civil Appeals and remand the case to that court for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, BROWN, WOODALL, and STUART, JJ., concur.
LYONS and HARWOOD, JJ., concur specially.
JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
SEE, J., recuses himself.
HARWOOD, Justice (concurring specially).
I concur fully with the main opinion. I write specially to address an issue to which Rayfield Foster devotes 24 pages of the "Argument" section of his briefthe admissibility of the medical records and reports at issue in this case. Over the course of those two dozen pages, Foster argues that the various records and reports in question were in fact properly admitted and considered by the trial court. This argument presented to this Court in this certiorari proceeding ignores the procedural obstacle presented to our review of the issue by the fact that the Court of Civil Appeals expressly held in its September 28, 2001, opinion that all of the reports and records were inadmissible for one reason or another and that their admission into evidence by the trial court was error. The Court of Civil Appeals went on to hold, however, that the error was rendered harmless, based on its analysis of the bases and content of the testimony of Dr. Michael McClanahan, Foster's vocational expert.
Foster understandably did not apply to the Court of Civil Appeals for rehearing as to its findings and rulings concerning the inadmissibility of all of those records and reports, because he was the prevailing party and only "[a] party who has not prevailed may apply for a rehearing." Rule 40(a), Ala. R.App. P. Likewise, procedurally Foster was not in a position to "cross-petition" this Court for a writ of certiorari to the Court of Civil Appeals concerning its rulings as to evidentiary admissibility because his status after the September 28, 2001, opinion of the Court of Civil Appeals affirming the trial court's ruling in his favor was such that he did not qualify for any of the limited grounds for petitioning for the writ of certiorari specified by Rule 39(a)(1)(A)-(E), Ala. R.App. P. Thus, because of the procedural strictures of Rule 39, he cannot now challenge the findings and holdings of the Court of Civil Appeals declaring all of the records and reports in question to have been improperly admitted by the trial court, and those findings and holdings by the Court of Civil Appeals constitute the law of the case.
Accordingly, it is not within the scope of our review on this petition of American Color Graphics, Inc., for a writ of certiorari to assess independently and to determine the admissibility of those records and reports. Therefore, the starting point of our analysis in this case is necessarily that all of the records and reports at issue were improperly admitted into evidence by the trial court and were therefore ineligible for use as a foundation for Dr. McClanahan's various opinions predicated upon them and were likewise ineligible for independent consideration by the trial court.
LYONS, J., concurs.
JOHNSTONE, Justice (concurring in the rationale in part and concurring in the judgment).
But for one exception, I concur in the main opinion, which reverses the judgment *391 of the Court of Civil Appeals and remands this cause. I respectfully except to the holding that "We find no fault with these conclusions by the Court of Civil Appeals" (in its analysis of the admissibility of various exhibits introduced by the plaintiff over the defendant's objections). I respectfully do find fault with the conclusion and rationale of the Court of Civil Appeals in its analysis of the admissibility of one of these exhibits, Plaintiff's Exhibit 2(A), Dr. Allen's medical report.
The plaintiff offered Exhibit 2(A) as an exception to the hearsay rule as defined by Rule 803, Ala. R. Evid., in either subsection (4) ("Statements for Purposes of Medical Diagnosis or Treatment") or subsection (6) ("Records of Regularly Conducted Activity"). The Court of Civil Appeals expressly finds and holds that Exhibit 2(A) fulfills the criteria for admissibility as an exception to the hearsay rule as defined by the aforesaid Rule 803(4) ("Statements for Purposes of Medical Diagnosis or Treatment"). Yet the Court of Civil Appeals finds and holds the exhibit to be inadmissible because it does not also fulfill the criteria of aforesaid Rule 803(6) ("Records of Regularly Conducted Activity").
This analysis is wrong. Evidence which entirely fulfills the criteria for one exception to the hearsay rule is admissible, irrespective of whether it fulfills the criteria for still other exceptions to the hearsay rule. Reeves v. King, 534 So.2d 1107, 1112 (Ala.1988) ("`[I]t must be borne in mind that there are numerous exceptions to the hearsay rule and that an utterance, while not properly admitted under one exception, may very well be admitted under another.'" (quoting Yates v. Bair Transport, Inc., 249 F.Supp. 681, 684 (S.D.N.Y. 1965))).
Moreover, I do not agree with the opinion of the Court of Civil Appeals that Exhibit 2(A) was prepared in anticipation of litigation and therefore was unqualified to be an exception to the hearsay rule as defined by Rule 803(6) ("Records of Regularly Conducted Activity"). The only evidence cited by the Court of Civil Appeals for its conclusion that Exhibit 2(A) was prepared in anticipation of litigation is that, after the plaintiff filed suit, his lawyer referred him to Dr. Allen, the author of the exhibit, who had previously treated the plaintiff. From this limited evidence, the Court of Civil Appeals concludes that the exhibit, Dr. Allen's report, is untrustworthy as a record kept in the regular course of Dr. Allen's profession to memorialize his own acts and observations performed in the regular course of his profession. This conclusion is an untenable aspersion on all physicians and an unjust infringement of the treatment rights and litigation rights of all injured litigants.
I agree, however, with the other conclusions by the Court of Civil Appeals that the other exhibits were inadmissible. Yet I disagree with that court that the error by the trial court in admitting the inadmissible exhibits was harmless. Therefore, I concur in the main opinion, subject to the exception I have already explained, that this cause must be reversed and remanded.
NOTES
[1] Foster's attorney referred him to each of the doctors and psychologists whose report was submitted into evidence. With the exception of Dr. Robert Allen, whom Foster saw once before filing his complaint in this action, his first visit to each one of those doctors was after the action had been filed.