DONALDSON, Judge.
The, City of Thomasville (“the City”) appeals from a judgment entered in favor of its former employee Calvin Tate by the Clarke Circuit Court (“the trial court”) awarding Tate benefits he claimed under the Alabama Workers’ Compensation Act (“the Act”), § 25-5-1 et ,seq., Ala.Code 1975. The trial court concluded that Tate’s injuries arose out of and occurred in the course of his employment with the City; appointed a new authorized treating physician for Tate;- - and awarded Tate temporary-total-disability- "benefits, permanent-total-disability benefits, and past' medical expenses relating to treatment from an unauthorized treating physician. We affirm’ that part of the judgment awarding Tate disability benefits. Because Tate did not utilize the means provided in the Act for an employee who is dissatisfied with an initial authorized treating physician to select a second physician, we reverse those portions of the judgment appointing a new authorized treating physician for Tate and ordering' the City to pay for the medical expenses of Tate’s unauthorized treating physician.
On July 1, 2011, Tate filed a complaint in the trial court seeking compensation and benefits under the Act. Tate claimed that on April 26, 2010, he had been employed by the City as a police sergeant and had suffered injuries to his- neck and back when he wrecked his patrol vehicle while driving at a high rate of speed to respond to a report of a robbery. The accident happened on “Old Highway 5” outside of the City’s police jurisdiction. The City filed an answer on August 8, 2011, denying *666 that Tate’s injuries were compensable on various grounds, including that Tate’s injuries did not arise out of and in the course of his employment with the City.
The trial court held a bench trial on May 23, 2013. The documents and testimony presented at trial show the following pertinent facts. Landon Coston, a sergeant with the City’s police department, testified that department policy required officers to notify dispatch and their supervisor before leaving the City’s police jurisdiction. Co-ston testified that on the day of the accident, a radio dispatch issued a call to all units regarding a robbery. Coston testified that, he did not hear Tate respond to the dispatch. Coston stated that he then contacted Tate using a “walkie-talkie” feature on their mobile telephones and that Tate responded that he was on his way to the location of the robbery. Coston testified that he told Tate not to hurry but to continue to the location. Coston testified that he had no knowledge of why Tate was on Old Highway 5. About two minutes after the call went out regarding the robbery, Tate notified Coston that he had had an accident. Coston testified that the location of the wreck was between two and five miles outside the City’s police jurisdiction.
Tate admitted that, at the time of the accident, he was outside the City’s police jurisdiction. However, he testified that “I was informed as being the supervisor I could patrol anywhere in the jurisdiction or outside the jurisdiction as long as I was in the scope of my job of patrolling” and that Maui-ice Dyess, who was the City’s chief of police at the time of the accident, “gave me permission. I asked him at one time was a sergeant able to leave the jurisdiction without his permission and he said yes.” Dyess denied that Tate had work-related business outside the City’s police jurisdiction or that he had given Tate permission to be outside the City’s police jurisdiction. Tate testified that, when the accident occurred, the blue lights on his vehicle were illuminated and he was driving at approximately 90-100 miles per hour. Dyess testified that he did not have an objection to an officer’s responding with his lights on at a high rate of speed to an emergency call.
Tate testified that he was seen by Dr. Huey Kidd, the physician who had been authorized by the City to treat Tate’s injuries. Dissatisfied with the treatment he received from Dr. Kidd, Tate sought treatment from Dr. Timothy Holt, who performed surgery on Tate’s neck. Regarding his selection of Dr. Holt, Tate testified on cross-examination:
“Q. Dr. Kidd further says that he never made any referral. On page twenty-two of his deposition we asked him: ‘Did you ever make a referral to Dr. Timothy Holt in Montgomery?’ He said he did not.
“A. No. He never referred me. I asked him if it was okay if I got a second opinion.
“Q. You never asked him about any particular doctor to go to?
“A. I asked him about Dr. Holt.
“Q. You did ask him about Dr. Holt?
“A. Yes. I asked him would it be okay if I went and seen him.
[[Image here]]
“Q. You realize that Dr. Holt has testified that nobody referred him to you?
“A. No one did. I called him on my own. I got the number. I received this phone number and I got his number. That’s how I went to see him.
“Q. Dr. Kidd didn’t have anything to do with sending to you Dr. Holt?
“A. No.”
Tate testified that he experienced some relief from his complaints as a result of the surgery. However, Tate also testified that *667 he was still experiencing pain from his injuries.
Tate’s vocational expert, Donald Blan-ton, testified that Tate is 100% disabled. Eric Anderson, the City’s vocational expert, assigned a vocational-disability rating of 0% to Tate. Tate testified that he was receiving Social Security Disability Insurance benefits for permanent, total disability.
On March 28, 2014, the trial court entered a judgment containing extensive findings of fact and conclusions of law. The trial court concluded that Tate’s injuries arose out of and occurred in the course of his employment with the City. The trial court found that Tate was permanently and totally disabled and awarded him accrued temporary-total-disability benefits, permanent-total-disability benefits, and past medical expenses arising from his treatment by Dr. Holt. The judgment also appointed a new authorized treating physician for Tate’s future medical treatment. The City did not file a postjudgment motion with the trial court, but it filed a timely notice of appeal on April 16, 2014. The City presents six issues on appeal: 1) whether the trial court erred in awarding benefits to Tate; 2) whether Tate had deviated from his employment at the time of his injuries such that his claims were not compensable; 3) whether Tate was in violation of work-related rules and regulations at the time of the injuries such that his claims were not compensable; 4) whether the trial court erred in awarding past medical expenses for treatment provided by Dr. Holt, an unauthorized treating physician; 5) whether the trial court’s judgment finding that Tate was permanently and totally disabled was supported by the record; and 6) whether the trial court prematurely determined that Tate’s injuries arose out- of and occurred in the course of his employment with the City. However, the City does not clearly delineate its arguments as to each listed issue in its brief. The City offers no argument or citation to authority regarding the sufficiency of the evidence to support the trial court’s finding that Tate was totally and permanently disabled, and that argument is therefore waived. See Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) (“When an appellant fails to argue an issue in its brief, that issue is waived.”). Rather, the City focuses on four arguments: whether Tate’s injuries were compensable under the Act, whether the trial court erred by preventing the City from presenting witnesses to impeach Tate’s credibility, whether the trial court improperly shifted the burden of proof regarding com-pensability to the City, and whether the trial court erred in awarding Tate compensation for past treatment performed by an unauthorized treating physician and erred in appointing a new authorized treating physician.
“The standard of appellate review in workers’ compensation cases is governed by § 25-5-81(e), Ala.Code 1975, which provides that, ‘[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’ ‘Substantial evidence’ is “‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989)).
“When evidence is presented ore ten-us, it is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented. Blackman v. Gray Rider *668 Truck Lines, Inc., 716 So.2d 698, 700 (Ala.Civ.App.1998). The role of the appellate court is not to reweigh the evidence but to affirm the judgment of the trial court if its findings are reasonably-supported by thé evidence and the correct legal conclusions have been drawn therefrom. Ex parte Trinity Indus., 680 So.2d at 268-69; Fryfogle v. Springhill Mem’l Hosp., Inc., 742 So.2d 1255 (Ala.Civ.App.1998), affd, 742 So.2d 1258 (Ala.1999). The ‘appellate court must view the facts in the light most favorable to the findings of the trial court.’ Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund, 867 So.2d 1099, 1102 (Ala.2003). ‘The legal conclusions of the trial court in a workers’ compensation case are reviewed de novo on appeal.’ Ex parte Morris, 999 So.2d 932, 936 (Ala.2008); see also Ex parte American Color Graphics, Inc., 838 So.2d 385, 387-88 (Ala.2002).”
Ex parte Hayes, 70 So.3d 1211, 1215 (Ala.2011).
The City argues that the trial court erred by finding that Tate’s injuries were compensable under the Act. In support of that argument, the City first takes issue with the trial court’s finding that,
“[i]n the early morning hours of April 16, 2010, shortly after midnight, Tate was out on duty and patrol. He had followed a subject vehicle outside of the city limits of Thomasville, in an effort to determine if the subject vehicle’s driver was intoxicated. Tate eventually decided based upon the suspect’s driving, that he had no probable cause to pull the driver over, and Tate pulled off the road to turn around. - While he was turning around, Tate received a call from his co-sergeant, Lindsey Coston, - that a 911 robbery call had come in. Sergeant Co-ston requested that Tate respond.”
The City is correct that the trial court’s finding that Tate was following a vehicle whose driver Tate suspected of. driving under the influence is unsubstantiated by the record and appears to be erroneous. That factual error notwithstanding, testb mony at trial from Tate and Coston supports the trial court’s finding that Tate was driving back into the City’s police jurisdiction to respond to the robbery call at the time the accident occurred. The City attempts on appeal, as it did at trial, to speculate that, at the time of the accident, Tate was “on some mission strictly personal to himself and not in the act of any service or other act incidental to his employment with the City.” The reason that Tate was outside of the City’s police jurisdiction before responding to the robbery call was not sufficiently addressed at trial to negate the trial court’s finding, which is supported by 'substantial evidence, that, at the time of the accident, Tate was responding to that call. Further, the trial court heard conflicting testimony regard1 ing whether Tate had received permission from Dyess to patrol the location of the accident because of suspected drunk-driving activity in that area. There was also conflicting testimony regarding whether that location was subject to the concurrent jurisdiction of the City’s police department and the Clarke County Sheriff. Regardless whether Tate was on a personal errand before the robbery call, the trial court’s finding that, at the time of the accident, Tate was responding to a call that was within the line and scope of his employment is supported by the evidence. Therefore, the erroneous reason recited in the trial court’s judgment regarding why Tate was out of the City’s police jurisdiction is not a sufficient basis to reverse the judgment finding Tate’s injuries to be com-pensable. We note that the City did not present this argument to the trial court, and, even if it had done so, the factual *669 error is not a sufficient ground upon which the trial court could have vacated its finding of compensability. See Rule 61, Ala. R. Civ. P. (an error or defect in an order should not cause the order to-be set aside “unless refusal to take such action appears to the court inconsistent with substantial justice”).
The City further argues that, if Tate was otherwise within the line and-scope of his employment at the time of the accident, his injuries are not compensable because Tate was traveling at a high rate of speed and not wearing a seatbelt. The City points to - § 25-5-51, Ala.Code 1975, which provides, in pertinent part, that “no compensation shall be allowed for an injury ... caused by the willful misconduct of the employee, ... [or] his or her willful failure or willful refusal to use safety appliances provided by the employer.... ” The City also argues that Tate violated § 32-5A-7(b)(3), Ala.Code 1975, which provides that “[t]he driver of an authorized emergency vehicle may ... [e]xceed the maximum speed limits so long as he does not endanger life or property.” However, the trial court heard testimony from Dyess indicating that he did not have' a problem with an officer’s responding with his vehicle lights on at a high rate of speed to an emergency call. The City presented insufficient evidence indicating that Tate’s rate of speed was in violation of a statute or a City policy or that his rate of spéed was the cause of the accident. Although the City presented testimony from Coston indicating that he had told Tate not to hurry, the City did not present sufficient evidence to demonstrate that Tate’s rate of speed at the time of the accident constituted willful misconduct. The City also argues that Tate was not wearing a seatbelt at the time of the accident and that, therefore, he willfully failed or refused “to use safety appliances provided by the employer.” However, the trial court heard conflicting testimony regarding whether Tate was wearing a seatbelt at the time of the accident. Viewing the evidence in the light most favorable to the findings of'the trial court, the record contains substantial evidence to support the trial court’s findings, and we will not reweigh that evidence on appeal.
The City also argues that it “was precluded by the Trial Court from presenting witnesses who would have further impeached the credibility. of Calvin Tate.” However, the City made no offer at trial of what the substance of the allegedly precluded testimony would have been. See Rule 103(a)(2), Ala. R. Evid. (“Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.”). The City did not object to any ruling by the trial court excluding witnesses at trial, did not proffer what it was prohibited from showing at trial, does not argue on appeal which witnesses or evidence would have otherwise been presented, and does not argue how the alleged exclusion prejudiced the City. Therefore, no reversible error is presented as to this argument.
The City next argues
“that the [trial court] had already opined prior to hearing evidence that Calvin Tate was acting within the scope of his employment. The [City] was allowed to offer proof regarding this issue and called Linzy Coston_ As noted by the statements made by the [trial court], the [trial court] decided, without even hearing the testimony of Calvin Tate, that he was operating his police cruiser within the line and scope of his employment.”
*670 The City appears to be referring to the following statements the trial court made to counsel for the City at trial:
“When you get ready to put on your case, [counsel for the City], I will allow you to put that testimony on and introduce whatever statute or city regulation that you want introduced. For purposes of going forward, I’m satisfied that [Tate] was operating within the line and scope of his employment. He was not headed out of town to go get a cheeseburger. He was responding to a call.”
The City appears to argue that the trial court impermissibly shifted the burden of proof to the City, as the employer, on the issue whether Tate as acting within the line and scope of his employment at the time of the accident.
“The employee generally has the burden of proof to establish a right to workers’ compensation benefits under the Act. See Safeco Ins. Cos. v. Blackmon, 851 So.2d 582 (Ala.Civ.App.2002). The employer has the burden of proving any affirmative defenses or any issue that may reduce a workers’ compensation award. See 2 Terry A. Moore, Alabama Workers’ Compensation § 25:4 at 615 (1998)(‘[T]he employer bears the burden of proof on any issue that may reduce its compensation outlay such as: the unreasonable refusal of the employee to accept suitable employment or to submit to medical treatment or vocational rehabilitation. ...’).”
McRae v. Second Mile Dev., Inc., 139 So.3d 171, 176 (Ala.Civ.App.2013). To the extent the trial court’s statements constituted an erroneous shifting of the burden of proof, the City did not object to the procedure nor did the City file a post-judgment motion arguing that the trial court impermissibly shifted the burden to the City. Therefore, no reversible error has been established. We note further that the trial court’s judgment is supported by substantial evidence indicating that Tate was acting within the line and scope of his employment.
Regarding the issue of payment for unauthorized medical care, the Act provides that once an employee notifies an employer of a work-related injury, the employer has a duty to provide medical care through an “initial treating physician selected by the employer,” pursuant to § 25-5-77(a), Ala.Code 1975.
“This court has consistently construed the language of [§ 25-5-77(a), Ala.Code 1975,] to mean that the employer is not liable for medical or surgical treatment ... obtained by the employee without justification or notice to the employer. Alverson v. Fontaine Fifth Wheel Co., 586 So.2d 216, 217 (Ala.Civ.App.1991); Genpak Corp. v. Gibson, 534 So.2d 312, 313 (Ala.Civ.App.1988); Kimberly-Clark Corp. v. Golden, 486 So.2d 435, 437 (Ala.Civ.App.1986); and Allen v. Diversified Products, 453 So.2d 1063, 1065 (Ala.Civ.App.1984). In some situations an employee may be justified in failing to obtain authorization from his employer before incurring medical expenses, as when (1) the employer has neglected or refused to provide the necessary medical care; (2) where notice of, and a request for, alternative care would be futile; and (3) where other circumstances exist that justify the employee’s selection of alternative care. Combustion Engineering, Inc. v. Walley, 541 So.2d 560, 561 (Ala. Civ.App.1989); and Kimberly-Clark Corp. v. Golden, 486 So.2d 435, 437 (Ala.Civ.App.1986).”
Gulf States Steel, Inc. v. White, 742 So.2d 1264, 1269 (Ala.Civ.App.1999). An employer’s denying the compensability of an injury may indicate that the employee’s request for treatment would be futile. If so, the employee may obtain his or her *671 own treatment; however, “evidence that the employer has provided adequate medical attention when requested before will usually negate the contention that a request would be futile.” 2 Terry A. Moore, Alabama Workers’ Compensation § 17:16 (2d ed.2013)(citing in a footnote Grantham v. Amoco Fabrics Co., 514 So.2d 1383 (Ala.Civ.App.1986), aff'd, 514 So.2d 1385 (Ala.1987)). An employer may authorize medical treatment without waiving the employer’s right to deny the compensability of the injury. See Ex parte LKQ Birmingham, Inc., 159 So.3d 766, 774 (Ala.Civ.App.2014).
The City argues that the trial court’s judgment requires it to pay for past and future medical treatment provided to Tate by an unauthorized physician. This, argues the City, is in violation of § 25-5-77(a), which requires an employee who is dissatisfied with an initial treating physician to notify the employer so that the employee may then “select a second physician from a panel or list of four physicians selected by the employer.” The evidence established that the City had authorized and had paid for medical treatment for Tate’s injuries from Dr. Kidd. Tate accepted that treatment and the designation of Dr. Kidd as the authorized treating physician. Once he accepted the designation of Dr. Kidd as the authorized treating physician, Tate was required to follow the procedures set out in § 25-5-77(a) before he could obtain other medical treatment at the City’s expense. Tate’s testimony at trial clearly indicates that he sought medical treatment from Dr. Holt, a second, unauthorized physician, without providing notice to the City, asking for the appointment of a second physician, or otherwise following the procedures provided for employees in § 25-5-77(a). We agree with the City that the trial court’s order imposed on it liability for the payment of medical treatment that was unauthorized. Therefore, we reverse the judgment of the trial court insofar as it imposed liability for past unauthorized medical treatment and insofar as it appointed an unauthorized physician as Táte’s future treating physician in a manner that is inconsistent with the procedures of § 25-5-77(a), and we remand the case to the trial court. In all other respects, we affirm the judgment of the trial court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., concurs in the result, without writing.